[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Bank of Boston Connecticut (the "Bank"), in a second amended five count complaint, instituted this proceeding against the defendant, Walter Schlichting ("Walter") and his wife, Angela ("Angela"). In count one, the Bank seeks to collect a debt from Walter owed under a guarantee of a $400,000 note. In counts three and five, the Bank asserts claims against Walter and Angela under our Uniform Fraudulent Transfers Act, Sec. 52-552f (a) et seq. of the General Statutes, and attempts to set aside transfers of real property and mutual funds made by Walter to Angela.[1] The Schlichtings answered counts one and three with a single special defense claiming that the Bank appraised certain real property at an inflated price with the intent that Walter would rely upon the appraisal, and that Walter did in fact rely upon it to his detriment. The Schlichtings, however, have not filed an answer to count five of the second amended complaint. The Bank filed a reply to the special defense denying the allegations therein.
On April 28, 1989, Walter executed a guarantee agreement in favor of the Bank wherein he personally guaranteed a note CT Page 11305 executed by Carolyn Rose, Inc., in the original principal amount of $400,000. It alleges that Carolyn Rose, Inc. defaulted on the note in July of 1995, and that Walter has refused to pay the sums due under the guarantee.
Prior to the default, on October 22, 1993, Walter quitclaimed his interest in real property, the couple's primary residence located at 102 Holmes Road in Ridgefield, to Angela for no consideration. In January of 1994 and the spring of 1995, Walter also transferred his interest in certain mutual funds to Angela.
Presently before the court is the Schlichtings' motion for summary judgement which was filed on July 5, 1997, and addresses counts three and five of the complaint. In their memorandum, the Schlichtings contend that "said transfers outlined in said counts are not fraudulent as defined by [Sec.] 52-552 et seq."
The Bank's motion for summary judgment on counts one, three and five, and its opposition to defendants' motion for summary judgment on counts three and five is also before the court. Although the Schlichtings had previously moved for summary judgment on counts three and five, they did not file an opposition memorandum to the Bank's motion on counts-one, three and five.
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled judgment as a matter of law. . . . The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." (Citations omitted.) Wilson v. New Haven,213 Conn. 277, 279 (1989). "[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a CT Page 11306 directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) Suarez v. Dickmont Plastics Corp.,229 Conn. 99, 105-06 (1994).
In support of its motion for summary judgment under count one, the Bank has submitted, among other evidence, the affidavit of Judy Germano, its Senior Special Claims Officer. The affidavit demonstrates that (1) the note is in default; (2) the Bank has accelerated the note; (3) the Bank has demanded payment from Walter under the guarantee; and (4) that Walter has refused to meet his obligations under the guarantee.
The Schlichtings, as previously noted, have not filed an opposition to the Bank's motion for summary judgment on count one. "The existence of the genuine issue of material fact must be demonstrated by counter affidavits and concrete evidence. . . . If the affidavits and the other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his burden of proof." (internal quotation marks omitted.) 2830 Whitney Avenue Corp. v.Heritage Canal Development Associates Inc., 33 Conn. App. 563,567, 569 (1994). When a party moves for summary judgment "and there [are] no contradictory affidavits, the court properly decide[s] the motion by looking only to the sufficiency of the [moving party's] affidavits and other proof." Heyman AssociatesNo. 1 v. Insurance Co. of Pennsylvania, 231 Conn. 756, 795
(1995).
The Bank's affidavit does indeed satisfy the movant's burden of proof. Conversely, the Schlichtings have not demonstrated "[t]he existence of [a] genuine issue of material fact . . . by counteraffidavits [or any other] concrete evidence." The Bank's motion for summary judgment on count one therefore must be granted.
To reiterate, both the Schlichtings and the Bank have moved for summary judgment on counts three and five regarding the alleged fraudulent transfers of real property and mutual funds. The sole ground for the Schlichtings' motion on count three is that "Judge Grogins ruled that the October 23, 1993 transfer of the defendant's home . . . was not a fraudulent transfer as defined by C.G.S. § 52-552 et seq."[2] Judge Grogins, however, never ruled that the transfer of the home was not a fraudulent transfer.[3] He did, however, deny the Bank's prejudgment remedy because "a fraudulent transfer is a question CT Page 11307 of fact, and fraudulent intent must be proved by clear, precise and unequivocal evidence. . . . The plaintiff's proof has not risen to the level of clear, precise and unequivocal evidence." (Citations omitted.)[4] The Schlichtings' motion for summary judgment on count three of the complaint is, accordingly, denied.
Their motion for summary judgment directed to count five is grounded upon the assertions that Walter (1) was not insolvent at the time of the two transfers; and (2) did not intend to conceal his property or avoid the claims of his creditors. There are genuine issues of material fact in dispute with respect to his solvency on the dates of the alleged fraudulent transfers. In addition, "[s]ummary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." (Internal quotation marks omitted.)Suarez v. Dickmont Plastics Corp., supra, 111. Consequently, their motion on count five of the complaint is also denied.
The Bank's attack on counts three and five is postulated on Sec. 52-552 f(a).[5] Under that section, "there is a cause of action for constructive fraudulent conveyance . . . and the fraudulent intent of the transferor is not an element of such a cause of action. . . . A conveyance is constructively fraudulent . . . if made without substantial consideration by a person who is, or will be rendered by such conveyance, insolvent." Weiss, Connecticut Fraudulent Conveyance Law, 11 U. Bridgeport L. Rev. 489, 511-12 n. 95, 96 (1991).
The Bank has prepared a financial "Analysis of Affidavit — 1/94," which purportedly demonstrates that in October of 1993, Walter was rendered insolvent by the first alleged fraudulent transfer, because it left him with liabilities totaling $527,000 and assets totaling $270,000. It further contends that Walter was insolvent at the time the mutual funds were transferred. However, those numbers were derived, at least in part, from an estate planning form completed in January of 1994, by Walter for Attorney Kevin M. O'Grady. On the estate planning form, Walter listed his total liabilities as $0 and his total assets as $185,700. Moreover, the Schlichtings dispute the fact that Walter was insolvent during the relevant time periods.
To conclude, there are indeed genuine issues of material fact regarding Walter's assets, liabilities and solvency on the dates of the three alleged fraudulent transfers, and thus, the Bank's CT Page 11308 motion for summary judgment on counts three and five of the complaint is denied.
Moraghan, J.